ESTATE OF PEARCE: KITTSON, Appellant, vs. BOVILLE, Executrix, Respondent.

*April 30—June 5, 1956.*

For the appellant there was a brief and oral argument by *E. B. Martineau* of Marinette.

For the respondent there was a brief and oral argument by *Norman B. Langill* of Marinette.

BROADFOOT, J.   On July 6, 1946, the decedent was living on a farm west of the city of Marinette with a daughter and son-in-law.  On that date a neighbor drove the claimant and her three children to the farm to visit the decedent.  This

neighbor testified at the hearing that the decedent asked claimant if she could come to Marinette and live with her; that she offered to pay for her keep but that she would be unable to pay regularly and claimant could get her money from the estate after her death. A son of decedent, a half-brother of the claimant, testified that soon after the decedent commenced living with the claimant at Marinette she was visited by a daughter living in Tacoma, Washington. The son visited the home at that time and heard a conversation between the sister living in Tacoma and the decedent in which the decedent stated that she was going to pay claimant for her room and board. The deposition of the daughter living in Tacoma, Washington, was taken there and presented as part of the claimant's proof. In the deposition the daughter related the conversation with her mother at claimant's home and her mother stated that she had promised claimant to pay her for her board and room.

The decedent became ill in February, 1950, and was taken to a hospital. Upon her release from the hospital it was deemed necessary that she stay at some home where someone would be in constant attendance, as claimant worked in a factory and was away from home nearly every day. Accordingly, arrangements were made that she should live with one of her sons.

About three months thereafter an attorney residing at Marinette was appointed as her guardian. As such guardian he made an agreement with the son to pay for her board, room, and care. After her death the guardian was attorney for the executrix. He testified to three conversations with the claimant in which claimant stated that she did not have a written agreement with her mother, that she did not have an oral agreement with her mother, and that there were no promises. The claimant testified that she misunderstood the attorney in their conversations and it was her impression therefrom that she had been told she could not recover unless

she had a written contract, and she had stated to him that she had no written contract.

Testimony was introduced as to the value of the board, room, and personal services furnished. Several small checks drawn by the decedent payable to the claimant were also introduced. Claimant testified that these checks, with some other payments totaling about $200, had been received by her from her mother in partial payment under the agreement. No other explanation was given as to the checks.

Although the hearing was concluded in August, 1952, it was not decided until February 10, 1954, when the trial court filed a memorandum opinion, of which the following is a part:

"The legal question involved here, of course, is the presumption of services furnished by a daughter to her mother are gratuitous. In order to recover reasonable value of board, room, and services furnished by a daughter to her mother, the daughter must prove an express contract by direct and positive evidence or equivalent thereof to overcome the presumption that the services were not gratuitous. Ghents' Estate, 241 Wis. 514.

"Claimant in the instant case has failed to prove such express contract by direct and positive evidence, and she, therefore, cannot maintain her claim on a *quantum meruit* basis.

"I must, therefore, disallow her claim *in toto*."

Since no specific findings were made, we do not clearly understand the basis for the trial court's action. It appears to us the court felt that the presumption of gratuity had not been overcome. His doubt, that it took eighteen months to resolve, apparently was about the law rather than the facts to be gleaned from a relatively short record. However, when the neighbor and the brother and sister of the claimant testified to the conversations had and the statements made by the decedent, the presumption disappeared. Their testimony was direct and positive, and not in any way incredible.

So far as the record is concerned the brother and sister would be affected adversely by their testimony. Their positive and direct statements were not attacked in any way except by possible admissions made by the claimant when she was not under oath. She testified under oath that the statements she made were the result of a misunderstanding. The attorney testified to three conversations with claimant. The first was when he was guardian and before claimant was entitled to her money if she established her contract. The other two conversations were over the telephone, the last one after the claim was filed and after claimant was known to be represented by counsel. The first two conversations involved other matters.

We give full credit and great weight to the statements by the attorney, but a careful study of his testimony demonstrates that the claimant may well have misunderstood him and that her answers were a result of that misunderstanding. Therefore, since the presumption of gratuity had been overcome, the conclusion of the trial court is against the great weight and clear preponderance of the evidence.

No finding was made as to the reasonable value of the board, room, and services furnished by the claimant. It is, therefore, necessary that the record be remanded for such a finding, and for the entry of judgment in favor of the claimant for the amount so found, less the sum of $200 admittedly paid on account.

*By the Court.*—Judgment reversed. Cause remanded for further proceedings in conformity with this decision.